IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---

MURPHY MEDICAL ASSOCIATES, LLC;
DIAGNOSTIC AND MEDICAL SPECIALISTS OF
GREENWICH, LLC; AND STEVEN A.R. MURPHY,
M.D.

                              Plaintiffs,

    v.


AETNA HEALTH INC.; AETNA INC.; AETNA
BETTER HEALTH INC.; AETNA GLOBAL BENEFITS
LIMITED; AETNA LIFE INSURANCE COMPANY;
AETNA MEDICARE; AETNA SIGNATURE
ADMINISTRATORS; AETNA STUDENT HEALTH
AGENCY INC.; MERITAIN HEALTH INC.; MERITAIN
HEALTH NATIONAL GENERAL; FIRST HEALTH
GROUP CORP.; and FIRST HEALTH NETWORK

                              Defendants.

---

Civil Action No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

:

---

Plaintiffs, Murphy Medical Associates, LLC and Diagnostic and Medical Specialists of

Greenwich, LLC (collectively, "Murphy Medical") and Steven A.R. Murphy, M.D. ("Dr.

Murphy"), by their attorneys, Parrett Porto Parese and Colwell P.C., for their Complaint against

the Defendants, Aetna Health, Inc., Aetna Inc., Aetna Better Health Inc., Aetna Global Benefits

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE. STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

Limited, Aetna Life Insurance Company, Aetna Medicare, Aetna Signature Administrators, Aetna Student Health Agency Inc., Meritain Health Inc., Meritain Health National General, First Health Group Corp. and First Health Network (hereinafter, collectively "Aetna"), allege as follows:

## NATURE OF THE CLAIMS

1. Plaintiffs bring this action against Aetna because it has unjustifiably engaged in conduct during the COVID-19 pandemic, a public health emergency, which attempts to evade and circumvent its obligations (1) to fully cover its members' diagnostic COVID-19 testing and related services and (2) to reimburse the Plaintiffs for bona fide COVID-19 testing and related services in accordance with methodology established and supported by federal law.

2. In March 2020, Congress passed two statutes in response to the COVID-19 public health emergency—the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act")—requiring that all group health plans and health insurance issuers providing health insurance coverage in connection with group or individual health plans, such as Aetna, "*shall provide coverage*"[1] and "*shall reimburse the provider*"[2] at no cost to their members for all in vitro diagnostic products and tests for the detection, diagnosis, and administration of the COVID-19 virus

---

[1] FFCRA § 6001(a) (emphasis added).
[2] CARES Act § 3202 (a) (emphasis added).

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE HD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H-3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

that are approved, cleared or authorized by the FDA or that have been submitted for emergency use authorization, and that were provided on or after March 18, 2020 and during any portion of the COVID-19 public health emergency period.[3]  This includes all "[i]tems and services furnished to an individual during health care provider office visits (which term…includes in-person visits and telehealth visits)…that result in an order for the administration of [a COVID-19 test]…to the extent such items and services relate to the furnishing or administration of such product or to the evaluation of such individual for purposes of determining the need of such individual for such product."[4]

3.  Under the FFCRA, plans and issuers must provide this coverage without imposing any cost-sharing requirements, including deductibles, copayments, and coinsurance, or prior authorization or other medical management requirements.[5]  Section 3201 of the CARES Act amended § 6001 of the FFCRA to include a broader range of diagnostic testing items and services that plans and issuers must cover without any cost-sharing requirements or prior authorization or other medical management requirements.[6]

---

[3] *See* CARES Act § 3201; FFCRA § 6001.
[4] FFCRA § 6001(a)(2).
[5] FFCRA § 6001(a); *see also* Centers for Medicare & Medicaid Services, *FAQs About Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation Part 42* at 2 (Apr. 11, 2020) (hereinafter "*FAQs About FFCRA and CARES Act Implementation Part 42*"), https://www.cms.gov/files/document/FFCRA-Part-42-FAQs.pdf (last visited February 6, 2023).
[6] *Id.*

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

4. In addition, § 3202 (a) of the CARES Act "requires plans and issuers providing coverage for these items and services *to reimburse any provider* of COVID-19 diagnostic testing an amount that equals the negotiated rate or, if the plan or issuer does not have a negotiated rate with the provider, the cash price for such service that is listed by the provider on a public website."[7] In other words, plans and issuers are required to provide coverage for items and services that are furnished by out-of-network providers.[8]

5. Under the FFCRA, plans and issuers cannot use medical management, including specific medical screening criteria such as the presence of symptoms or a recent known or suspected exposure, to deny (or impose cost sharing on) a claim for COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to the virus.[9] Consequently, "[w]hen an individual seeks and receives a COVID-19 diagnostic test from a licensed or authorized health care provider…plans and issuers generally *must assume* that the receipt of the test reflects an 'individualized clinical assessment' and the test should be

---

[7] *Id.* at 2 (emphasis added). Furthermore, "nothing in the FFCRA or the CARES Act prevents a state from imposing additional standards or requirements on health insurance issuers with respect to the diagnosis or treatment of COVID-19, to the extent those standards or requirements do not prevent application of a federal requirement." *Id.*

[8] *Id.* at 7 ("If the plan or issuer does not have a negotiated rate with such provider, the plan or issuer shall reimburse the provider in an amount that equals the cash price for such service as listed by the provider on a public internet website, or the plan or issuer may negotiate a rate with the provider for less than such cash price.").

[9] Centers for Medicare & Medicaid Services, *FAQs About Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation Part 44* at 2 (Feb. 26, 2021) (hereinafter "*FAQs About FFCRA and CARES Act Implementation Part 44*"), https://www.cms.gov/files/document/faqs-part-44.pdf (last visited February 6, 2023).

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE FD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

covered without cost sharing, prior authorization, or other medical management requirements."[10]

6. Thus, the insurer is not permitted to make plan coverage decisions or rate setting decisions because of (1) the mandatory nature of coverage in the FFCRA; and (2) the fact that the CARES Act prescribes the method for determining the rate.

7. As for methods of enforcement of these laws, the FFCRA and the CARES Act do not explicitly address the manner in which a COVID-19 testing provider can obtain its mandatory reimbursements.  Section 6001 of the FFCRA authorizes the Secretaries of Health and Human Services, Labor, and the Treasury to enforce its requirement that insurers cover the cost of COVID-19 tests, and Section 3202 of the CARES Act permits the Secretary of Health and Human Services to impose a fine on certain providers, but this administrative enforcement scheme does not establish an administrative remedy for providers who are denied reimbursement.

8. Additionally, and as a result of the federal legislation, Aetna has explicitly guaranteed to its members who are enrolled in either commercial, Medicare or Medicaid plans that they "will not have to pay any out-of-pocket costs for a COVID-19 vaccine, regardless of

---

[10] *Id.* at 2-3 (emphasis added).

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE FD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

whether they go to an in- or out-of-network pharmacy or provider."[11]  Aetna members may

also receive COVID-19 booster shots as well as third doses of an mRNA vaccine at no cost

to them, as will children over the age of 12 (and children aged 5 to 12 will receive initial

pediatric doses), consistent with the recommendations of the CDC and in conjunction with

advice from their health care provider.[12]

9.   The United States has experienced five waves of the pandemic since 2020, including three

that were driven by new variants: Alpha, Delta, and Omicron.  As stated in President Joseph

Biden's National COVID-19 Preparedness Plan, the country is focused on four goals:

protect against and treat COVID-19; prepare for new variants; prevent economic and

educational shutdowns; and continue to vaccinate the world.[13]

10.   The Biden Administration has recognized that "[i]n January 2021, Americans had very few

tools to protect against COVID-19, and the tools we did have were in limited supply," but

"together, with states, localities, and public and private partners, the Administration has

mobilized an unprecedented, whole-of-society effort to give Americans the tools they need

to protect themselves."[14]

---

[11] *See* Aetna, *COVID-19: Vaccine FAQ's, available at* https://www.aetna.com/individuals-families/member-rights-resources/need-to-know-coronavirus/vaccines.html (last visited February 6, 2023).
[12] *Id.*
[13]   *See* The White House, *National COVID-19 Preparedness Plan, available at* https://www.whitehouse.gov/covidplan/.
[14] *Id.*

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

11. In the face of the most serious public health crisis in over a century, Murphy Medical rose to the occasion.  Beginning in 2020 and continuing to the present, Murphy Medical has been at the forefront of providing critical COVID-19 testing and related services to members of major health care companies, including Aetna, that are comprehensive, high-quality and efficient.

12. By virtue of an Independent Practice Association Agreement with Yale Community Medical Group ("CMG"), effective as of March 31, 2007, and amended from time to time (collectively, "IPA"), Murphy Medical was an in-network participating provider with Aetna until February 7, 2021.  As such, Murphy Medical was entitled to receive a percentage of its listed cash price for "medically necessary"[15] COVID-19 testing and related items and services provided to Aetna members through that date.  Thereafter from February 8, 2021 to the present, as an out-of-network provider, Murphy Medical was

---

[15] Section 1.26 of the IPA, at p. 5 (Mar. 31, 2007), defines "medically necessary" as "[h]ealth care services that a physician, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are (a) in accordance with generally accepted standards of medical practice; (b) clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease, and (c) not primarily for the convenience of the patient, physician or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury, or disease.  For these purposes, 'generally accepted standards of medical practice' means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, or otherwise consistent with physician specialty society recommendations and the views of physicians practicing in relevant clinical areas and any other relevant factors."

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H-3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

entitled to receive the listed cash price for those items and services, pursuant to FFCRA and the CARES Act, because it did not have a negotiated rate.[16]

13. Murphy Medical's cash price for COVID-19 testing and related items and services was posted on its public internet website[17] pursuant to Section 3202(b) of the CARES Act.

14. It is against this backdrop that Aetna has failed to honor its legal and contractual obligations under federal law and the IPA to pay for COVID-19 testing and related services provided to members of its health care plans by Murphy Medical from March 2020 to the present, with total claims against the insurer in excess of $4 million. These failures also give rise to state statutory and common law causes of action.

15. Murphy Medical seeks to accomplish the following by way of this litigation: (1) hold Aetna responsible for its unlawful practices; (2) ensure that Murphy Medical is properly reimbursed for its efforts to provide a public service in response to an unprecedented public health emergency; and (3) safeguard against future unlawful practices instituted by Aetna and other insurers and health plans in the wake of future national public health emergencies.

---

[16] CARES Act § 3202.
[17] https://coronatestct.com/

## JURISDICTION AND VENUE[18]

16. This Court has jurisdiction over this dispute under 28 U.S.C. § 1331 because the Plaintiffs and Dr. Murphy assert federal claims against Aetna under FFCRA, the CARES Act, and ERISA.

17.  This Court also has supplemental jurisdiction over the Plaintiffs' state law claims against Aetna because these claims are closely related to the federal claims of the Plaintiffs such that the state law claims form a part of the same case or controversy.  This Court, therefore, has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

18. This Court has personal jurisdiction over Aetna because the insurer carries on one or more businesses or business ventures in this federal judicial district; there is the requisite nexus between the businesses and this action; and Aetna engages in substantial and not isolated activity within this district.

19. Venue is proper within this district under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events giving rise to this action arose in this district.

## PARTIES

---

[18] Simultaneously with the filing of the instant Complaint in federal court, Plaintiffs also have filed a Demand for Arbitration against Aetna with the American Arbitration Association (AAA) for their claims submitted during the term of the IPA (March 9, 2020-Feb. 7, 2021), which total approximately $3.5 million.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE. 1-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

20. At all times relevant to this matter, Plaintiff Murphy Medical Associates, LLC is a limited liability company organized under Connecticut law.  Its principal place of business is located at 40 East Putnam Avenue, Suite 2C, Cos Cob, Connecticut 06807.  The mission of the practice is to provide high-quality preventative care and general health care services as well as acute primary care to adults and adolescents.

21. At all times relevant to this matter, Plaintiff Diagnostic and Medical Specialists of Greenwich, LLC, is a limited liability company organized under Connecticut law.  Its principal place of business is located at 30 Buxton Farms Road, Suite 220, Stamford, Connecticut 06905.

22. At all times relevant to this matter, Plaintiff Steven A.R. Murphy, M.D. ("Dr. Murphy") is a physician licensed to practice medicine in Connecticut and New York.  A board-certified internist, Dr. Murphy is the principal of Murphy Medical.  His principal place of practice is located at 30 Buxton Farms Road, Suite 220, Stamford, Connecticut 06905, and he is a resident of the State of Connecticut.

23. Dr. Murphy graduated from New York Medical College in 2004.  He completed his internship in medical genetics and pediatrics at Mount Sinai Hospital in New York.  He subsequently served as Chief Resident for Internal Medicine at Greenwich Hospital—Yale New Haven Health in Greenwich, Connecticut, from July 2007 through May 2008.  Prior

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS No. 045340

to establishing his private practice, Dr. Murphy served as a clinical fellow in medical genetics at Yale Medical School in New Haven, Connecticut, from June 2008 through November 2008.

24. Dr. Murphy specializes in general medical care, personalized medicine and genetics, weight loss medicine, adolescent care and hereditary cancers. In addition, Dr. Murphy is an FAA Senior Aviation Medical Examiner, United States Civil Surgeon and an obesity medicine specialist.

25. Dr. Murphy also serves as an assistant professor of medicine, cell biology and anatomy at New York Medical College in Valhalla, New York.

26. Dr. Murphy is a certified laboratory director for Plaintiff Diagnostic and Medical Specialists of Greenwich, LLC, under the federal Clinical Laboratory Improvement Amendments ("CLIA") and Connecticut law.

27. On information and belief, Defendant Aetna Health, Inc., is a publicly-traded corporation doing business for profit nationally with its corporate headquarters located at 151 Farmington Avenue, Hartford, Connecticut 06156.

28. On information and belief, the following Defendants are affiliates, subsidiaries and/or associated entities of Aetna Health, Inc.: Aetna Inc., Aetna Better Health Inc., Aetna Global Benefits Limited, Aetna Life Insurance Company, Aetna Medicare, Aetna Signature

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H-2, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

Administrators, Aetna Student Health Agency Inc., Meritain Health Inc., Meritain Health National General, First Health Group Corp. and First Health Network.

29. Aetna, which is a wholly-owned subsidiary of CVS Health, provides, underwrites, and administers health insurance benefits of Connecticut residents.

## MURPHY MEDICAL'S RESPONSE TO THE COVID-19 PANDEMIC

30. In response to the COVID-19 pandemic, beginning on or about March 9, 2020, Murphy Medical determined that there was a need for high-quality and efficient COVID-19 testing and related services throughout Southwestern Connecticut and the Hudson Valley. Following the guidance of the CDC[19] as well as evidence-based and peer-reviewed studies by infectious disease experts,[20] Murphy Medical developed a comprehensive testing protocol, investing over $1 million in setting up drive and/or walk-through COVID-19 testing sites in both Connecticut and New York.

---

[19] *See* CDC, *Lab Advisory: Updated Guidance on Testing Persons for Coronavirus Disease 2019 (COVID-19)* (Mar. 20, 2020) ("There are epidemiologic factors that may also help guide decisions about COVID-19 testing. Documented COVID-19 infections in a jurisdiction and known community transmission may contribute to an epidemiologic risk assessment to inform testing decisions. Clinicians are strongly encouraged to test for other causes of respiratory illness as well (e.g., influenza)."). *See also FAQs About FFCRA and CARES Act Implementation Part 42, supra* note 6 at 6 ("[T]he CDC strongly encourages clinicians to test for other causes of respiratory illness.").

[20] *See, e.g.*, Amy L. Leber et al., *Multicenter Evaluation of BioFire FilmArray Respiratory Panel 2 for Detection of Viruses and Bacteria in Nasopharyngeal Swab Samples*, J. CLINIC. MICROBIOL. (May 25, 2018) (finding that "rapid diagnosis of respiratory infections [such as that provided by the BioFire Panel] can lead to decreased length of stay, better antimicrobial stewardship, and better patient cohorting to prevent nosocomial infections"), https://journals.asm.org/doi/10.1128/JCM.01945-17 (last visited February 6, 2023).

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H-3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

31. Initially, Murphy Medical used nasopharyngeal swabs to collect patient samples to test for SARS-CoV-2, which samples were sent to Murphy Medical's laboratory or to a third-party laboratory for testing, because Murphy Medical lacked the capacity to perform COVID-19 testing in its internal laboratory at that time.

32. As the operator of a moderately complex laboratory, Murphy Medical could utilize only the following tests: Respiratory Module Kits (QiaStat, BioFire[21] or Cepheid[22]); Non-PCR Loop-Mediated Amplification (LAMP) Technology tests[23] (now referred to as IDNow[24]); tests that would need to be sent to a partner laboratory for processing, such as Labcorp, Sema4 or Boston Heart.

33. In or around May 2020, Murphy Medical presciently recognized that in addition to testing for COVID-19, there needed to be testing for other respiratory viruses and infections that could mimic the symptoms of the coronavirus, which would enable efficient treatment of patients who were symptomatic but tested negative for COVID-19.  To that end, Dr. Murphy purchased an advanced BioFire Film Array System, which was authorized by the

---

[21] Biofire had excess supply of a COVID-19 only test kit made exclusively for the Department of Defense. While Murphy Medical was provided limited access to these kits, and did in fact run them, BioFireDX ceased production in favor of the BIOFIRE® RP2.1.

[22] Cepheid originally ran a smaller panel test, and eventually, a COVID-19 only test. Despite repeated efforts to procure these testing services, Murphy Medical was unable to procure these testing kits from Cepheid.

[23] Murphy Medical was unsuccessful in obtaining LAMP testing for all of 2020, despite Congressional letters to the manufacturer urging them to provide access to these testing services to Murphy Medical.

[24] https://www.abbott.com/IDNOW.html

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

FDA for emergency use in May 2020 with COVID-19 testing capabilities.[25]   Prior to his

purchase of this advanced system, testing for SARS-CoV-2 was performed by collecting

patients' nasopharyngeal swabs and sending them out to laboratories for processing, the

results of which could take days or weeks to process.   With Dr. Murphy's purchase of the

BioFire System and his use of the BIOFIRE ® RP2.1 Panel,[26] however, he could test

patients for SARS-CoV-2 as well as many other respiratory viruses with results in

approximately 45 minutes with 98.4 percent sensitivity for SARS-CoV-2, and requiring

only two minutes of hands-on time by the provider.[27]

34. Murphy Medical embarked on this major undertaking by first building the infrastructure

required to operate COVID-19 testing sites using the BioFire System with accuracy,

reliability, and efficiency.   This entailed hiring clinical personnel to staff the sites,

---

[25] *See* Biomerieux, Press Release, *BioFire Respiratory Panel 2.1 with SARS-CoV-2 obtains FDA Emergency Use Authorization* (May 4, 2020), https://www.biofiredx.com/wp-content/uploads/PRESS-RELEASE-BIOFIRE%C2%AE-Respiratory-Panel-2.1-RP2.1-with-SARS-CoV-2.pdf (last visited February 6, 2023).

[26] This panel accurately detects and identifies 22 respiratory pathogens, including SARS-CoV-2, which enables "better-informed diagnosis and treatment of patients." *See* BioFire, *1 Test.   22 Targets. ˜ 45 Minutes.*, https://www.biofiredx.com/products/the-filmarray-panels/filmarrayrp/ (last visited February 6, 2023).

[27] *See* CDC, *Multipex Assay for Flu & SARS-CoV-2* (Oct. 6, 2021) (finding that "the CDC Flu SC2 multiplex assay is important [because it] diagnoses infection with the SARS-CoV-2, influenza A, and/or influenza B viruses in one test; allows laboratories to process more tests in a given time period, using less reagents; gives public health officials information they need in their efforts to control the spread of COVID-19 and flu; allows for ongoing flu surveillance while also testing for SARS-CoV-2; [and] conserves important testing materials that are in short supply"), https://www.cdc.gov/coronavirus/2019-ncov/lab/multiplex.html (last visited February 6, 2023); BioFire, *Covid PCR Testing Can Be Fast—and It's More Accurate than Rapid Antigen Tests*, https://www.biofiredx.com/blog/covid-pcr-testing-rapid-antigen-tests/ (last visited February 6, 2023).

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

including physicians, physician assistants, nurse practitioners, and registered nurses; developing policies and procedures to ensure the sites were operated efficiently; and purchasing supplies and equipment in order to provide a desperately needed service to the public, including Aetna's members and beneficiaries.  Since March 2020, Murphy Medical has provided COVID-19 testing and related services to Aetna members during more than 27,000 unique encounters.

35. On March 17, 2021, the BioFire 2.1 became the first COVID-19 test to upgrade from an emergency use authorization to fully approved FDA status.[28]  The results of recent peer-reviewed empirical studies have confirmed that "[s]creening for bacterial respiratory infections upon COVID-19 testing is important to drive suitable therapeutic approaches and avoid unnecessary antibiotic prescription."[29]  Murphy Medical's use of its BioFire machines at its internal laboratory enabled Murphy Medical to analyze the samples and produce results at a much faster rate than that of commercial labs.

36. Murphy Medical also provided COVID-19 antibody blood testing in its lab for patients who knew or had reason to believe they had recovered from the virus.  When medically

---

[28] *See* U.S. Food & Drug Admin., *FDA Permits Marketing of First SARS-CoV-2 Diagnostic Test using Traditional Premarket Review Process*, https://www.fda.gov/news-events/press-announcements/fda-permits-marketing-first-sars-cov-2-diagnostic-test-using-traditional-premarket-review-process (last visited February 6, 2023).
[29] *See, e.g.,* Matheus Negri Boschiero et al., *Frequency of Respiratory Pathogens other than SARS-CoV-2 Detected during COVID-19 Testing*, DIAGN. MICROBIOL. INFECT. DIS. (Feb. 2022), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8531239/.

appropriate, those patients who had tested positive for COVID-19 or COVID-19 antibodies were assessed via additional blood testing to determine whether any damage had been done to the body's organs, tissues, or systems,[30] including indicators of a SARS-CoV-2 reinfection or post-COVID-19 conditions also termed "long Covid."[31]

37. When medically appropriate, Murphy Medical conducted a medical history and examination of patients who sought COVID-19 testing, which ensured that each patient received the safest and most effective treatment.  Murphy Medical also counseled patients regarding precautionary measures vis-à-vis COVID-19, which was critical during the onset of the pandemic when patients had little or no direct contact with their primary care physicians due to the closures of many clinics.[32]

---

[30] *See, e.g.,* Panagis Galiatsatos & Robert Brodsky, *What does COVID Do to Your Blood?*, Johns Hopkins Medicine (Mar. 3, 2022) (discussing the ways in which the coronavirus attacks the body, impacting organs and tissues as well as the blood), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/what-does-covid-do-to-your-blood (last visited, February 6, 2023).

[31] *See, e.g.,* CDC, *Assessment & Testing: Evaluating and Caring for Patients with Post-COVID Conditions* (June 14, 2021) ("A basic panel of laboratory tests might be considered for patients with ongoing symptoms (including testing for non-COVID conditions that may be contributing to illness) to assess for conditions that may respond to treatment….The absence of laboratory-confirmed abnormalities or the decision to forgo extensive laboratory testing should not lead to dismissing the possible impact of a patient's symptoms on their daily function.  Where clinically indicated, symptom management and a comprehensive rehabilitation plan can be initiated simultaneously with laboratory testing for most patients."), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/post-covid-assessment-testing.html (last visited February 6, 2023).

[32] *See* N.Y.S. DEPT. OF HEALTH, *New York State Medicaid Billing Guidance for COVID-19 Testing, Specimen Collection and Therapeutics* ("Providers are reminded that, 'all persons being tested, regardless of results, *should receive counseling on the continuation of risk reduction behaviors* that help prevent the transmission of SARS-CoV-2 (e.g., wearing masks, physical distancing, and avoiding crowds and poorly ventilated spaces)' per CDC guidance."), https://www.health.ny.gov/health_care/medicaid/covid19/guidance_for_specimen_collection.htm (last visited February 6, 2023) (Emphasis added).

PARKETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE HD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

PARRETT PORTO PARISE & COLWELL, P.C.

2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

38. Likewise, Murphy Medical conducted telemedicine visits with patients to monitor the status of their conditions and to determine whether further medical intervention was necessary. The frequency and duration of these visits was premised upon each patient's history, with priority given to those patients who were symptomatic.

**AETNA'S VIOLATION OF FEDERAL & STATE LAW**

39. Beginning in March 2020, Murphy Medical began providing COVID-19 testing and related services to members of Aetna.

40. Most of Aetna's members are covered by private employee welfare benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), but some are covered by non-ERISA health benefit plans. The plans obligate Aetna to pay in accordance with the member's right to receive reimbursement, whether for in-network or out-of-network providers.

41. Beginning in 2020, Aetna explicitly represented to its members that it is "waiving member cost-sharing for diagnostic testing [including serological or antibody testing] related to COVID-19," that this "member cost-sharing waiver applies to all commercial, Medicare

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

and Medicaid lines of business" as well as to self-insured plans, and that Aetna's policies "align with" the FFCRA and CARES Act.[33]

42. However, in direct contravention of federal and state law, Aetna has denied the majority of claims by Murphy Medical for COVID-19 testing and related services that were provided to Aetna's members and/or beneficiaries.   Aetna has rejected these claims based upon unfounded rationales, including that preauthorization was required; that unspecified information of documentation was not submitted; and that the testing or services were "experimental," "investigational," or not "medically necessary,"[34] conclusions reached by Aetna after substituting its own judgment for that of the medical provider.[35]   Murphy Medical has appealed these claims denials, but to no avail.

---

[33] *See* Aetna, *Testing & Treatment Information: Coverage and Authorization,* https://www.aetna.com/individuals-families/member-rights-resources/need-to-know-coronavirus/testing-treatment-information.html   (last   visited February 6, 2023).

[34] Examples of specific denial reasons contained on Aetna remittance forms include: charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement; claim/service denied; precertification/ authorization/notification absent; charges ineligible based on the exclusions outlined in the benefit plan; non-covered charges; an attachment/other documentation is required, to adjudicate this claim/service; these are noncovered services because this is not deemed a 'medical necessity' by the payer; and procedure/treatment/drug is deemed experimental/investigational by the payer.

[35] For example, in a letter dated July 28, 2022, denying payment to Murphy Medical at the final level of appeal available, Aetna stated: "Our medical director has reviewed your final appeal and determined that the services described by code(s) 0223U-59 are not eligible for payment.  Aetna considers Coronavirus COVID-19 (SARS-CoV-2) respiratory panel (up to 5 respiratory pathogens) polymerase chain reaction (PCR) testing *medical necessary* [only] when member has signs and symptoms of COVID-19 and test will be used to guide therapy." (Emphasis added).

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE HD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

43. Aetna has further violated FFCRA and the CARES Act by requesting reimbursement *from Murphy Medical* for "overpayments" for COVID-19 testing and services that Murphy Medical provided to Aetna members, premised upon Aetna's assertion that "this plan does not cover this care or service." Thus, not only has Aetna refused to reimburse Murphy Medical's legitimate claims for reimbursement of COVID-19 testing and services, but it has demanded that Murphy Medical refund Aetna for claims that Aetna previously paid.

44. To date, Murphy Medical has billed Aetna approximately $6.8 million for providing COVID-19 testing and related items and services to its members and/or beneficiaries during more than 27,000 encounters. Murphy Medical provided this care at a critical time during a public health emergency, doing so with the expectation that it would be reimbursed by Aetna as required under the IPA and/or federal and/or state law. Aetna, however, has intentionally disregarded its legal obligations to comply with the mandate to cover COVID-19 testing and related items and services by denying the vast majority of those claims; although Murphy Medical has appealed many of the denials and provided the requested documentation and medical records to Aetna, virtually all of its appeals were summarily denied, making further efforts futile.

PARLETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE HD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

45. As a result of Aetna's failure to reimburse Murphy Medical for COVID-19 testing and related services for the time period of February 8, 2021 through December 30, 2022, the amount in dispute is approximately $670,000.00.

46. In addition to refusing to reimburse Murphy Medical for bona fide and medically-necessary COVID-19 testing and services, on information and belief, Aetna is notifying patients via notices of denial and/or explanations of benefits that they are personally responsible for paying Murphy Medical for the charges that Aetna has denied.

47. Such actions by Aetna were designed to malign Murphy Medical and Dr. Murphy within the community and among testing site sponsors and local governments.

48. Despite Aetna's actions, Murphy Medical remains stalwart in regard to never billing an Aetna member or beneficiary for any COVID-19 testing or related services, and despite Aetna's refusal to reimburse for its services, Murphy Medical will continue operating its existing testing sites as well as establishing new sites during this unprecedented public health crisis.

49. In short, although Murphy Medical, through counsel, has sought in good faith to resolve this dispute amiably and efficiently, Aetna has provided no response to its correspondence and, instead, has persisted in denying claims submitted by Murphy Medical.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE I-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

### FIRST CAUSE OF ACTION
### (VIOLATION OF THE FFCRA & THE CARES ACT)

50. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained above as if more fully set forth herein.

51. Aetna is a group health plan and health insurance issuer providing health insurance coverage in connection with group or individual health plans, as those terms are defined under Section 6001 of the FFCRA.

52. As such, Murphy Medical is required to comply with the mandates and obligations set forth in the FFCRA and the CARES Act related to coverage and reimbursement for COVID-19 testing and related services.

53. During the COVID-19 public health emergency, Murphy Medical provided COVID-19 testing and related services to Aetna's health plan members and beneficiaries, including (a) in vitro diagnostic products for the detection of SARS-CoV-2 or the diagnosis of the virus that causes COVID-19 that are approved, cleared, or authorized under the Federal Food, Drug, and Cosmetic Act (or that have been submitted for emergency use authorization), and the administration of such in vitro diagnostic products; (b) items and services furnished during office visits, which include both in-person and telehealth visits, that result in an order for or administration of an in vitro diagnostic product for the detection of COVID-19, as provided in Section 6001(a) of the FFCRA and Section 3201 of the CARES Act.

54. As an out-of-network provider from February 8, 2021 to the present, Murphy Medical was entitled to receive the listed cash price of COVID-19 testing and related items and services, pursuant to the mandatory payment scheme established by FFCRA and the CARES Act, as discussed *supra*.

55. The FFCRA and the CARES Act were passed by Congress in March 2020 to ensure that COVID-19 testing and related items and services were widely available to the U.S. population, which required providers to be willing to supply and administer the tests, which in turn required a reliable method of payment for those essential services.  In this way, these laws were intended to benefit and protect both patients and providers, such as Murphy Medical, the former group receiving the benefit of COVID-19 testing, and the latter group receiving guaranteed reimbursement for the service.

56. Despite repeated requests by Murphy Medical for the payments to which it is due as the intended beneficiary of the statutes, Aetna has wholly failed and refused to reimburse Murphy Medical for the listed cash price.

57. By its failure to remit such payment to Murphy Medical, Aetna breached its obligations under the FFCRA and the CARES Act.

58. By reason of Aetna's foregoing actions, Plaintiffs have been injured and are entitled to judgment against Aetna in an amount to be determined at the trial of this matter, which

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE I-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

amount is no less than $669,637.94, plus interest thereon, together with the costs and disbursements of this action.

## SECOND CAUSE OF ACTION
### (VIOLATION OF ERISA § 502(a)(1)(B))

59. Plaintiffs repeat, reiterate and reallege each and every allegation contained above as if more fully set forth herein.

60. Even assuming *arguendo* that the FFCRA and CARES Act did not, on their own, obligate Aetna to reimburse Murphy Medical for the medically-necessary COVID-testing and related services it provided to its members, Aetna still would be obligated to reimburse Murphy Medical for those services because the FFCRA and CARES Act are to be treated, for enforcement purposes, as if they were included in ERISA.

61. The FFCRA and CARES Act broadly apply to all health care plans, including ERISA plans, meaning that ERISA plans are required to cover COVID-19 testing and related services as provided in the FFCRA and the CARES Act.

62. Upon information and belief, a significant number of the claims that Murphy Medical has submitted to Aetna relate to patients enrolled in Aetna's health plans that are subject to ERISA.  ERISA, the FFCRA and the CARES Act require Aetna to cover COVID-19 testing and related services regardless of the terms of the health plan.

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 JURIS NO. 045340

63. ERISA § 502(a)(1)(B)[36] provides participants and beneficiaries a cause of action against plans for the denial of benefits or rights under an ERISA plan.

64. Upon information and belief, Aetna's health plans do not prohibit members from assigning their rights to benefits, including direct payments, under the plan to Murphy Medical, and/or designating an authorized representative to pursue claims and appeals on their behalf.

65. Even if some of the Aetna plans prohibited such an assignment to Murphy Medical, Aetna waived the purported anti-assignment provisions and/or ratified them based on its course of dealing with and statements to Murphy Medical and/or Dr. Murphy.

66. Murphy Medical has received valid and appropriate assignment of rights and authorization forms signed by Aetna members,[37] pursuant to which the patient "assign[s] to [Murphy Medical], for application onto your bill for services, all of your rights and claims for the medical benefits to which you or your dependents are entitled" and designates Murphy Medical as its authorized representative to pursue claims and appeals on their behalf.

---

[36] 29 U.S.C. § 1132.
[37] Plaintiff is not required at this juncture to identify specific Aetna members, as this is an area for discovery.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE FD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 ·JURIS NO. 045340

67. As such, Murphy Medical has standing to pursue claims under ERISA as the assignee and authorized representative of its patients, who are members or beneficiaries of Aetna's ERISA health plans.

68. As the assignee of its patients, Murphy Medical is entitled to payment under Aetna's health plans for medical services provided to Aetna's members by Murphy Medical.

69. Murphy Medical's charges represent its usual and customary rates for the treatment and services provided to Aetna's plan members or beneficiaries.

70. Aetna breached the terms of its ERISA health plans by failing and refusing to make out-of-network payments for Murphy Medical's charges covered by the plans, in violation of ERISA § 502(a)(1)(B).

71. Aetna's breaches include, but are not limited to: (a) failing and refusing to reimburse Murphy Medical for the medically necessary testing, including COVID-19 testing and related services, it provided to Aetna's members or beneficiaries, as required by the FFCRA and the CARES Act; and (b) otherwise failing and refusing to reimburse Murphy Medical the legally required amounts due under the plans for the medically necessary services, including COVID-19 testing and related services, provided by Murphy Medical to Aetna members or beneficiaries.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE HD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

72. Further, and to the extent that any of Aetna's ERISA plans have not followed the requirements of the FFCRA and the CARES Act, and do not provide full coverage for COVID-19 testing and related services, they are in violation of the FFCRA, the CARES Act and ERISA.

73. To the extent that any of Aetna's ERISA plans do provide COVID-19 testing benefits as required by the FFCRA and the CARES Act, Aetna has wrongfully failed to pay Murphy Medical as required by the plans, in violation of ERISA.

74. Based on the provisions of the FFCRA and the CARES Act, Murphy Medical reasonably expected that Aetna would honor its obligations and reimburse the practice for the COVID-19 testing and related services that it provided to its members, as other health plans similarly situated to Aetna had done.

75. Aetna's denials of claims submitted by Murphy Medical have been massive, repeated and automatic, as discussed *supra*. Aetna has failed to comply with or strictly adhere to 29 C.F.R. § 2560.503-1(b)(1) and 45 C.F.R. §§ 147.136 (b)(2)(ii)(F)(1), (b)(3)(ii)(F)(1), which set out minimum requirements of the internal claims and appeals processes (i.e., claims procedures). Therefore, the claims procedures available under Aetna plans are deemed to have been exhausted, allowing Murphy Medical to pursue any available remedies under ERISA § 502(a) or under state law on the basis that Aetna has failed to

provide a reasonable claims procedure that would yield a decision on the merits for the COVID-19 testing claims at issue.

76. In addition, because Aetna has reflexively denied tens of thousands of claims without legitimate justification, pursuing an appeal of each and every individual denial and/or exhausting all administrative remedies would be futile.

77. Based on Aetna's numerous procedural and substantive violations of ERISA, it is entitled to have this Honorable Court undertake a *de novo* review of the issues raised in this Complaint.

78. Furthermore, the Court may equitably reform the Aetna plans that do not comply with ERISA, the FFCRA and the CARES Act to render them compliant.  Fairness and justice require such equitable reformation because Murphy Medical provided an invaluable service to the community, in reliance on federal law regarding reimbursement, which Aetna has violated to its own benefit and to the detriment of the Plaintiffs and members of Aetna's plans.

79. By reason of Aetna's foregoing actions, Plaintiffs have been injured and are entitled to judgment against Aetna in an amount to be determined at the trial of this matter, which amount is no less than $669,637.94, plus interest thereon, together with the costs and

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE FD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE HD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

disbursements of this action, including reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1).

## THIRD CAUSE OF ACTION
### (VIOLATION OF ERISA: DENIAL OF FULL AND FAIR REVIEW)

80. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

81. On information and belief, Aetna's blanket denials of Murphy Medical's claims for COVID-19 testing and related services and its unjustifiable records requests, as described herein above, violate the provisions of the ERISA plans and wrongfully deny benefits due under ERISA.

82. Based on the foregoing, Aetna's actions and inactions relating to COVID-19 testing claims at issue in this lawsuit are tantamount functionally to an adverse benefit determination of these claims.

83. For adverse benefit determinations and/or denied claims pursuant to 29 U.S.C. § 1133, self-funded health plans subject to ERISA must: (a) provide adequate written notice to any member whose claim for benefits under the health plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the member; and (b) afford a reasonable opportunity to any member whose claim for benefits

has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim, pursuant to 29 U.S.C. § 1133(1) and (2).

84. As assignees and authorized representatives of its patients' claims, Murphy Medical is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Aetna; and (b) compliance by Aetna with applicable claims procedure requirements.

85. ERISA regulations make clear that, in the case of post-service claims submitted pursuant to group health plans, the required notification that the claim has been denied must be issued within a reasonable period of time, but not later than thirty (30) days after receipt of the claim, unless the member or beneficiary is notified that, due to circumstances beyond the plan's control, the plan requires an additional fifteen (15) days to issue a required denial notification, pursuant to 29 C.F.R. § 2560-503.1(f)(2)(iii)(B).

86. Although Aetna is obligated to provide a "full and fair review" of denied and underpaid claims pursuant to 29 U.S.C. § 1133, Aetna has failed to do so with the Murphy Medical claims by, among other things: (a) refusing to provide the specific reason or reasons for the denial or underpayment of claims; (b) refusing to provide the specific plan provisions relied upon to support its denials or underpayments; (c) refusing to provide the specific rule, guideline or protocol relied upon in making the decisions to deny or underpay claims; (d)

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

29

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO: 045340

refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment codes; (e) refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and any other information relevant to the claims for benefits; (f) refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure; (g) refusing to provide Murphy Medical with the documents and information relevant to Aetna's denial of the claims; (h) refusing to timely issue required notifications that the claims have been denied or underpaid; and, in general, (i) providing a functionally-meritless internal administrative appeals process.

87. By failing to comply with the ERISA claims procedure regulations, Aetna failed to provide a reasonable claims procedure and a full and fair review.

88. Because Aetna has failed to comply with the substantive and procedural requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(l) and 29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).

89. Exhaustion also is excused because it would be futile to pursue any administrative remedies based on Aetna's failure to acknowledge any legitimate basis for its denials, which offers no meaningful administrative process for challenging its denials.

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

90. Murphy Medical has been harmed by Aetna's failure to comply with applicable claims procedure regulations under ERISA and by its failure to provide a full and fair review of appeals submitted.

91. Murphy Medical is entitled to relief under 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief to remedy Aetna's failure to provide a full and fair review, to disclose information relevant to appeals and to comply with applicable claim procedure regulations.

92. By reason of Aetna's foregoing actions, Plaintiffs have been injured and are entitled to judgment against Aetna in an amount to be determined at the trial of this matter, which amount is no less than $669,637.94, plus interest thereon, together with the costs and disbursements of this action, including reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1).

### FOURTH CAUSE OF ACTION
### (VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT ("CUTPA")

93. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained above as if more fully set forth herein.

94. At all times relevant to this matter, Aetna was engaged in the trade or business of providing, underwriting and administering health insurance benefits to its members and beneficiaries

31

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE HD, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

in Connecticut and providing reimbursement to providers, such as Murphy Medical, who rendered services to its members and beneficiaries.

95. As alleged herein above, Murphy Medical submitted numerous claims to Aetna for COVID-19 testing and related services provided to its members from February 8, 2021 through December 30, 2022, totaling approximately $876,448.00.

96. Aetna was obligated to promptly reimburse Murphy Medical for providing those medically necessary COVID-19 testing and related services to Aetna's members and beneficiaries, pursuant to the applicable sections of the FFCRA and the CARES Act and the terms of its plans.

97. Despite its reimbursement obligations, and Murphy Medical's demand for compliance therewith, Aetna has failed and refused to do so.

98. Of the $876,448.00 of claims submitted by Murphy Medical to Aetna for COVID-19 testing and related services provided to its members from February 8, 2021 through December 30, 2022, only $206,810.06 was paid by Aetna.

99. Aetna's acts and omissions have taken place with extraordinary frequency over a period of years and are continuing so as to represent a general business practice.

100.    Aetna has engaged in anticompetitive conduct by refusing to pay substantially similar claims to Murphy Medical that it pays to its affiliate, CVS Health.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H-3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

101.      Aetna's actions constitute unfair insurance practices under the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-816,[38] in violation of Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.

102.      Aetna's acts and omissions are wanton and reckless given the harm that they have caused and will continue to cause Murphy Medical, and Aetna knew or should have known of the wrongfulness of its acts and omissions and that such severe harm would result from them.

103.      Aetna acted with reckless indifference to the rights of others, including Murphy Medical.

104.      Aetna's aforesaid acts and omissions offend public policy as established by CUIPA, the common law and other established notions of fairness.

---

[38] Specifically, Aetna has violated, *inter alia:* Conn. Gen. Stats. §§ 38a-816(6)(D) ("[R]efusing to pay claims without conducting a reasonable investigation based upon all available information"); 38a-816(6)(F) ("[N]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"); 38a-816(6)(H) ("[A]ttempting to settle claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application."); 38a-816(6)(L) ("[D]elaying the investigation or payment of claims by requiring an insurer, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information."); 38a-816(6)(N) ("[F]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."); and 38a-816(15) (failure by an insurer to pay health claims, including claims for reimbursement to health care providers, within the time periods set forth, shall require the insurer to pay the health care provider the amount of such claim plus interest at the rate of fifteen percent annum, in addition to any other penalties which may be imposed).

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

105.     Aetna's acts and omissions are immoral, unethical, oppressive and unscrupulous, with respect to their effects upon patients and providers, such as Murphy Medical. Specifically, Aetna maximized its profits at the expense of Murphy Medical's right to be reimbursed for COVID-19 testing and related services provided to Aetna members in accordance with the FFCRA and the CARES Act.

106.     Aetna's acts and omissions are causing substantial injury to its members and providers, including Murphy Medical, who continue to provide critical COVID-19 testing and related services for Aetna members and beneficiaries without being fully compensated for the same.

107.     Aetna's acts have caused Plaintiffs to suffer an ascertainable loss of money and/or property.

108.     Plaintiffs are entitled to compensation for the ascertainable loss they suffered as a result of Aetna's acts.

109.     By reason of Aetna's foregoing actions, Plaintiffs have been injured and are entitled to judgment against Aetna in an amount to be determined at the trial of this matter, which amount is no less than $669,637.94, plus interest thereon, together with the costs and disbursements of this action, as well as punitive damages and reasonable attorneys' fees, pursuant to Conn. Gen. Stat. § 42-110g.

## FIFTH CAUSE OF ACTION
### (QUANTUM MERUIT)

110.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained above as if more fully set forth herein.

111.    Murphy Medical provided bona fide COVID-19 testing and related services to members of health plans that Aetna provides, underwrites and administers.

112.    By providing necessary services throughout the course of the COVID-19 public health emergency to Aetna members, Murphy Medical conferred a benefit upon Aetna because the provision of these services facilitated Aetna's legal obligation to cover the costs of federally-mandated testing for its members.

113.    In addition, Aetna benefitted from the premiums paid by its members that enabled it to facilitate and cover COVID-19 testing and related services.

114.    Aetna also benefitted from Murphy Medical's COVID-19 testing and related services provided to Aetna's members because such services decreased the rate and, thus, the added cost of hospitalizations and long-term care as a result of early detection through testing for COVID-19 as well as other respiratory pathogens.

115.    Murphy Medical submitted numerous claims to Aetna for COVID-19 related testing and services provided to members or beneficiaries of Aetna's health plans.

116.    As a result, Aetna was aware that Murphy Medical provided bona fide COVID-19 testing and related services to Aetna members in satisfaction of Aetna's obligation to its members.

117.    Aetna voluntarily accepted, retained and enjoyed, and continues to accept, retain and enjoy, the benefits conferred by Murphy Medical, with the knowledge that Murphy Medical expects and is entitled to payment for such COVID-19 testing and related services.

118.    Despite proper demand being made on Aetna by Murphy Medical for payment of these services, Aetna has failed to reimburse Murphy Medical for the medically-necessary COVID-19 testing and related services provided to its members.  Aetna has received and retained the benefit of Murphy Medical's services, and it has been unjustly enriched through its use of funds that earned interest or otherwise added to its profits, when said money should have been paid in a timely and appropriate manner to Murphy Medical.

119. As a consequence of Aetna's retention of the benefits conferred to it by Murphy Medical without proper payment for the same, Plaintiffs have suffered damages.

120.    By reason of Aetna's foregoing actions, Plaintiffs have been injured and are entitled to judgment against Aetna in an amount to be determined at the trial of this matter, which amount is no less than $669,637.94, plus interest thereon, together with the costs and disbursements of this action.

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE 1-D, HAMDEN, CT 06518 • (203) 281-2700 • FAX (203) 281-0700 • JURIS NO. 045340

## SIXTH CAUSE OF ACTION
### (PROMISSORY ESTOPPEL)

121.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained above as if more fully set forth herein.

122.    Aetna represented to Murphy Medical that it would comply with the FFCRA and the CARES Act in its statements and publications emphasizing its compliance with those laws.

123.    Aetna represented to Murphy Medical that coverage for COVID-19 testing and related services would be afforded to its members consistent with its legal obligations.

124.    Aetna knew or reasonably should have known that Murphy Medical would rely on its representations with regard to reimbursement for such services.

125.    Aetna willfully and deliberately made these representations in order to induce Murphy Medical to invest its time, money and resources into providing services for its members and to generate a profit for Aetna.

126.    Murphy Medical reasonably relied, to its detriment, on Aetna's representations regarding payment and reimbursement, in that it provided COVID-19 testing and related services to Aetna members during more than 27,000 encounters.

PARRETT PORTO PARESE & COLWELL, P.C.

2319 WHITNEY AVE. STE F-D, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS No. 045340

127.    Despite its representations, Aetna arbitrarily adjudicated claims and failed and refused to issue proper reimbursement to Murphy Medical when Murphy Medical submitted claims for COVID-19 testing and related services it provided to Aetna members.

128.    Because of Aetna's misrepresentations and Plaintiffs' justified reliance thereon, Plaintiffs suffered considerable economic damages.

129.    By reason of Aetna's foregoing actions, Plaintiffs have been injured and are entitled to judgment against Aetna in an amount to be determined at the trial of this matter, which amount is no less than $669,637.94, plus interest thereon, together with the costs and disbursements of this action.

**WHEREFORE,** Plaintiffs demand judgment as follows:

(a) On the first count, a judgment against Aetna, awarding Plaintiffs compensatory damages in an amount to be determined at trial, such amount being no less than $669,637.94, plus pre-judgment and post-judgment interest;

(b) On the second count, a judgment against Aetna, awarding Plaintiffs compensatory damages in an amount to be determined at trial, such amount being no less than $669,637.94, plus pre-judgment and post-judgment interest, and attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1);

(c) On the third count, a judgment against Aetna awarding Plaintiffs relief under 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Aetna's failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claim procedure regulations, and attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1);

PARRETT PORTO PARESE & COLWELL, P.C.
2319 WHITNEY AVE, STE H3, HAMDEN, CT 06518 · (203) 281-2700 · FAX (203) 281-0700 · JURIS NO. 045340

(d) On the fourth count, a judgment against Aetna, awarding Plaintiffs compensatory damages in an amount to be determined at trial, such amount being no less than $669,637.94, plus interest at a rate of 15% per annum pursuant to C.G.S. § 38a-816(15)(A), and punitive damages and attorneys' fees, pursuant to C.G.S. § 42-110g;

(e) On the fifth count, a judgment against Aetna, awarding Plaintiffs compensatory damages in an amount to be determined at trial, such amount being no less than $669,637.94, plus pre-judgment and post-judgment interest;

(f) On the sixth count, a judgment against Aetna, awarding Plaintiffs compensatory damages in an amount to be determined at trial, such amount being no less than $669,637.94, plus pre-judgment and post-judgment interest; and

(g) Such other and further relief as this Court may deem just and proper.

Dated: Hamden, Connecticut
February 16, 2023

PARRETT PORTO PARESE & COLWELL P.C.
*Attorneys for Plaintiffs*

By: _____
Patrick J. Monahan II (ct06727)
Jennifer Rignoli (ct27538)
Tamar R. Birckhead (ct30217)
Parrett, Porto, Parese & Colwell, P.C.
2319 Whitney Avenue, Suite 1D
Hamden, CT 06518
pmonahan@pppclaw.com
jrignoli@pppclaw.com
tbirckhead@pppclaw.com
(203) 281-2700 – telephone
(203) 281-0700 – facsimile